UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                Case No. 3:19-cr-19

            Plaintiff,

      v.                                                     MEMORANDUM OPINION
                                                                  AND ORDER

George Shelton Jones, III

            Defendant.

## I. INTRODUCTION

Defendant George Shelton Jones, III seeks to suppress evidence found by police during their pursuit of him on November 26, 2018. (Doc. No. 17). The government filed a memorandum arguing Jones lacks standing to contest the discovery of the evidence. (Doc. No. 18). On November 24, 2020, I held a suppression hearing at which the parties offered evidence in support of their positions. (*see* Doc. No. 22). Following the hearing, the government filed a response in opposition to Jones's motion to suppress, (Doc. No. 23), and Jones filed a reply in support of his motion. (Doc. No. 26).

## II. BACKGROUND

Toledo Police Officers Raul Jaso and Joseph Keil were on a routine patrol in Toledo, Ohio, when they initially encountered Jones, shortly after midnight on November 26, 2018. At the time, the officers were traveling westbound on Lincoln Avenue and passing through the intersection of

Lincoln and Hoag Street when they saw two individuals walking southbound in the middle of the road on Hoag. (Doc. No. 22 at 18). Keil put the car in reverse and backed into the intersection because the officers planned to stop the two individuals for walking in the middle of the street in violation of Ohio Revised Code § 4511.50 and Toledo Municipal Code § 371.05. (*Id.* at 19, 55). But, either just as the officers ordered these individuals to stop, or just as the officers were exiting their vehicles to do so,[1] one of the individuals, who would later be identified as Jones, took off running. (*Id.* at 20-21, 48-49). Officer Jaso pursued Jones on foot while Keil stayed with Jones's companion.

As Keil was questioning Jones's companion, the resident of a nearby house emerged and Keil asked him if he had seen a man go running behind the house. (Doc. No. 25). The resident replied that he had not but gave Keil permission to search behind the house. (*Id.*). Keil proceeded to do so and found Jones hiding in a recreational vehicle (RV) located on the property.[2] (*Id.*). Keil ordered him out of the RV and placed him under arrest for obstruction of justice. Approximately five minutes later, Jaso returned to search the property Jones was found on and discovered a firearm near the RV. (Doc. No. 22 at 21).

Jones was subsequently indicted for being a felon in possession of a firearm.

### III.    DISCUSSION

Jones contends the officers violated his constitutional rights when they pursued, stopped, and ultimately arrested him. (Doc. No. 17). The government argues Jones cannot prevail because he lacks standing to challenge the search of the property that led to the discovery of the firearm, and

---

[1] Jaso testified that Jones fled after Jaso and Keil had exited their vehicle. (Doc. No. 22 at 20). Keil's testimony does not directly address whether the officers had exited their vehicle, but it does imply that Jones fled just as the officers came to a stop and before they had any chance to approach him. (Doc. No. 22 at 48). Neither officer recalls whether they made any verbal commands to Jones to stop.
[2] Keil was given permission by the resident to search the RV as well.

because the seizure of Jones did not violate the Fourth Amendment. (Doc. No. 18). In response, Jones contends he has standing under the "fruit of the poisonous tree" doctrine. (Doc. No. 26).

"It is long-settled that 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "Somewhat confusingly, the Supreme Court refers to this burden as Fourth Amendment standing. This type of standing, however, is not jurisdictional nor rooted in Article III, but 'is more properly subsumed under substantive Fourth Amendment doctrine.'" *Noble*, 762 F.3d at 526 (quoting *Rakas v. Illinois*, 439 U.S. 128, 139 (1978)); *see also United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001) (recognizing that the Supreme Court rejected the concept of standing, to the extent that it refers to something distinct from the merits, in *Rakas v. Illinois*).

Thus, by arguing that Jones lacks standing, the government is really saying that Jones is not able to show that *his* Fourth Amendment rights were violated by the officers' actions. Because Jones argues that both the search of the property and his arrest were in violation of his constitutional rights, I address both below.

**A. The Search**

"Under the Fourth Amendment, there are two ways in which government action may constitute a search." *United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020). The first occurs when "the government gains information by physically intruding into a constitutionally protected area—namely 'persons, houses, papers, and effects.'" *Id.* (quoting U.S. Const. amend. IV). This does not apply here because the government found the firearm on someone else's property, not Jones's. The second "occurs when a government official invades an area in which 'a person has a constitutionally protected reasonable expectation of privacy.'" *Id.* (quoting *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019); *Katz v. United States*, 389 U.S. 347, 360 (1960) (Harlan, J.,

3

concurring). To show that a search occurred under this second framework, Jones must establish that he had "an actual (subjective) expectation of privacy" in the place searched and that this expectation is one "that society is prepared to recognize as reasonable." *Id.* (quoting *Katz*, 389 U.S. at 361).

Even if I assume that Jones had an actual expectation of privacy when he left the firearm on the property, it would not be one that society is prepared to recognize as reasonable. *See Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (stating "[l]egitimation of expectations of privacy law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property or to understandings that are recognized and permitted by society.") (further citation omitted); *see also United States v. Britton*, 335 F. App'x 571, 576 (6th Cir. 2009) ("Once the loaded handgun was dropped in a place where the defendant had no reasonable expectation of privacy, there is no sensible rule that would prevent the police officer from picking it up.").

Jones next argues that he has standing to challenge the discovery of the firearm under the "fruit of the poisonous tree" doctrine. The fruit of the poisonous tree doctrine "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011) (quoting *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010)) (further citation omitted). But a defendant "can prevail on a 'fruit of the poisonous tree' claim only if he has standing regarding the violation which constitutes the poisonous tree." 6 Wayne R. LaFave, Search and Seizure § 11.4 (6th ed.); *see also Wong Sun v. United States*, 371 U.S. 471, 491-92 (1963) (explaining that only a defendant whose own privacy or property interests were affected by a search or seizure may contest its lawfulness). Thus, Jones cannot use the "fruit of the poisonous tree" doctrine to challenge the search of the property that led to the discovery of the firearm.

**B. Jones's Seizure**

Jones argues the officers violated his constitutional rights by chasing him, pursuing him into the yard, and arresting him. (Doc. No. 26). Jones does have Fourth Amendment standing to challenge the seizure of his person. Thus, if he can establish that the seizure was unconstitutional, and that the firearm was evidence derivatively obtained from this seizure, he would be entitled to suppression of the firearm.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the government." *United States v. Ward*, 756 F. App'x 560, 563-64 (6th Cir. 2018) (quoting U.S. Const. amend. IV). This protection extends to brief investigatory stops that fall short of traditional arrest. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)); *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). But the investigatory stop must qualify as a seizure for the Fourth Amendment's protections to apply.

In order for a seizure to occur, there must be a nonconsensual encounter in which the officer intentionally applies physical force, or the individual submits to the officer's show of authority. *Smith*, 594 F.3d at 535-36 (citing *Brendlin v. California*, 551 U.S. 249, 254 (2007)); *California v. Hodari D.*, 499 U.S. 621, 628 (1991). "[A]bsent the intentional application of physical force, even if there is a show of authority and a reasonable person would not feel free to leave, in order for a seizure to occur there must also be submission to the show of authority: 'there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.'" *Id.* (citing *Brendlin*, 551 U.S. at 254).

Here, Jones took off running just before the officers' approached him on foot. He did not submit to any show of authority until Keil ordered him to come out of the RV. Because the Fourth Amendment's protections were not implicated until that point, Jones cannot base a Fourth Amendment claim on the officers chasing him or pursuing him into the yard. *See Ward*, 756 F.

App'x at *568 ("The Fourth Amendment protects against unreasonable seizures, not unreasonable attempted seizures.").

Jones is also unable to base any Fourth Amendment violation on the officers' actions in the course of seizing him. This is because the officers had probable cause to believe that Jones had committed a violation of Ohio Revised Code § 4511.50 and Toledo Municipal Code § 371.05. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Given his conversation with the resident of the home, Keil also had probable cause to believe that Jones was trespassing when Keil found Jones in the RV.

Because Jones's seizure did not violate his Fourth Amendment rights, I need not address whether the firearm is evidence that was derivatively obtained from that seizure.

## IV. CONCLUSION

For the foregoing reasons, Jones's motion to suppress is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
